THE STATE, WEST JERSEY TRACTION COMPANY, PROSE-
CUTOR, v. THE BOARD OF. PUBLIC WORKS OF THE
CITY OF CAMDEN AND THE CAMDEN HORSE RAIL-
ROAD COMPANY.

1. The Camden Horse Railroad Company was incorporated by a special
   act in 1866. By its charter it was a horse railroad company having
   its location in Camden, and by it had no power to use electricity as a
   motive power. By *Pamph. L.* 1893, *p.* 144, it was made unlawful for
   any horse or street railway company, organized under the general law
   or any special act, to construct its tracks without first obtaining the
   consent of the governing body having the control of streets in any
   municipality. On May 4th, 1893, the board of public works of Cam-
   den granted, by resolution, power to said company to construct its
   railroad in accordance with its charter. After the adoption of the
   resolution the company commenced the work of laying tracks, but
   were restrained by injunction. On June 19th, 1893, the board of
   public works passed an ordinance granting to the company the privi-
   lege of using electric motors and confirming the grant made by reso-
   lution. On June 20th, 1893, the ordinance was removed into this
   court by *certiorari.* Notwithstanding the writ of *certiorari,* and pend-
   ing the litigation thereon, the company proceeded to lay down its
   tracks under pretext that such work was done in virtue of the resolu-
   tion of the board of public works. *Held*—
   1. The writ of *certiorari,* when served, operated as a stay of all pro-
   ceedings under the ordinance, and any proceeding in the face of its
   restraining order was a contempt.
   2. The ordinance having been adopted on the assumption that the
   resolution was invalid, as has since been decided, the act of the com-
   pany in laying its tracks under pretence of authority to do so by the
   resolution was simply a color for the evasion of the restraining force
   of the writ of *certiorari.*
   3. That the act was done after consultation with counsel, and upon his
   advice, will not justify disobedience when the proceeding is against
   the company and is in its nature remedial as well as for the vindica-
   tion of the authority of the court.
2. Proceedings by way of contempt will lie against corporations as well
   as against individuals. In the case of individuals the process is by
   attachment, followed by fine or imprisonment or both. Against cor-
   porations the writ of attachment is inappropriate. *Distringas* will
   issue as an original, to be followed, if necessary, by an *alias* and *pluries*
   until justice be done.

On rule that the Camden Horse Railroad Company show
cause in the matter of contempt.

Argued at November Term, 1895, before Justices DEPUE, VAN SYCKEL and GUMMERE.

For the rule, *Thomas E. French* and *Samuel H. Grey.*

*Contra, David J. Pancoast.*

The opinion of the court was delivered by

DEPUE, J. The Camden Horse Railroad Company was incorporated by a charter granted in 1866. *Pamph. L., p.* 640. Supplements to its charter were passed in 1868 (*Pamph. L., p.* 640) and in 1872. *Pamph. L., p.* 512. The company, by its charter, was a horse railroad company, having its location in the city of Camden. By its charter it had no power to use electricity as the propelling power of its cars. Such authority could only be obtained in conformity with the provisions of the act of 1886. *Rev. Sup., p.* 369, § 30. And by an act approved March 9th, 1893 (*Gen. Stat., p.* 3231), it was made unlawful for any horse or street railway company organized under the general law providing for the incorporation of such companies, or under any special or local act of incorporation, to lay or construct any railroad track or tracks or any extension of the same through or along any street of any municipality of this state without first obtaining the consent of the governing body having the control of the public streets, avenues or roads of such municipality. On the 4th of May, 1893, the company procured the adoption by the board of public works of the city of Camden of a resolution "that permission be and the same is hereby given to the Camden Horse Railroad Company to lay and construct its railroad in accordance with its charter in the city of Camden." This resolution was plainly a nullity. *Halsey* v. *Newark*, 25 *Vroom* 102.

To effectuate the purposes of the company, an ordinance of the board of public works was procured. This ordinance was passed June 19th, 1893. It recited the fact of the passage of the resolution above stated, and that it had been suggested

that the consent thereby given should have been by ordinance, and that the company "now having made application for the privilege of using electric motors to propel its cars, and erecting poles and stringing wires thereon for the purpose of supplying electricity, and this board being willing to confirm the aforesaid grant and to grant such privilege." The ordinance in section 1 confirmed the consent given by the resolution, and granted to the-company the right and power to use for its purposes each and every street and highway in the city. By the second section the company was authorized to use electric motors as the propelling power of its cars upon any of its railway tracks that were then laid or constructed in the city, or that might thereafter be laid, and to erect poles and string wires thereon to supply electricity. The third section ordained that for each pole erected the company should pay to the city treasurer $1, and that the poles should be of such size, length, character and quality as should be approved by the board, and should be placed under the direction of the street commissioner.

After the adoption of the resolution by the board of works, the company commenced the work of laying tracks, and was restrained by an injunction out of the Court of Chancery. On the 20th of June, the next day after the ordinance was passed, the West Jersey Traction Company obtained a writ of *certiorari* out of this court, duly allowed, to bring up the said ordinance for review. Upon this writ such proceedings were had that the ordinance was set aside by this court (*Traction Company* v. *Board of Works,* 27 *Vroom* 432), in a judgment which was affirmed in the Court of Errors, at June Term, 1895. The writ of *certiorari* was served on the secretary of the company on the day it was issued, and came to the knowledge of the president, the superintendent and the counsel of the company. Notwithstanding the writ of *certiorari*, and pending the litigation in this court, the company proceeded to lay down its tracks in the streets of the city, under the pretext that such work was done in virtue of the resolution of the board of public works which preceded the ordinance.

This proceeding was thereupon instituted against the company as for contempt.

The resolution under which the company professed to have acted in laying its tracks has recently been set aside by this court on *certiorari.* The fact that the resolution and the ordinance have both been vacated as illegal is of consequence only as determining the measure of redress that shall be adjudged in a proceeding of this character.

The writ of *certiorari* when served operated as a stay of all proceedings under the ordinance, and any proceeding in the face of its restraining order was a contempt. *McWilliams* v. *King,* 3 *Vroom* 21, 25; *Hunt* v. *Lambertville,* 17 *Id.* 59.

The president of the company testified that after the *certiorari* was obtained the company proceeded to lay its tracks, under and by virtue of the antecedent resolution of the board of public works. It is impossible to give to the testimony any effect other than mere color for the evasion of the restraining force of the process of the court. The ordinance assumed that the resolution was invalid and purported to validate it, and also contained a grant affirmatively of the right to use the streets of the city. It also conferred the additional right to use electric motors and erect poles, and imposed conditions for the benefit of the city. The company appeared in this court to uphold the ordinance, and, upon the decision vacating the ordinance, prosecuted a writ of error in the Court of Errors, with a view to sustain the ordinance by the decision of that court. It was known to the company's representatives that the writ of *certiorari* was sued out by the prosecutor to enjoin the laying of tracks by the defendant company in streets in which the prosecutor claimed rights in virtue of filed locations of routes for its tracks, and that the purpose of the writ, after its allowance and service, was to restrain the defendant from putting down its tracks until the conflicting rights of the parties should be determined. If the defendant desired to be quit of the restraining effect of the writ, application should have been made to the justice by whom the writ was allowed, to modify its restraining force. No such application was

made, and so far as appears in this case the first disclosure of the purpose of the defendant to put down the tracks, the laying of which the *certiorari* was designed to prevent, under the pretext of the resolution, was when the testimony of the defendant's president was given in this proceeding.

The president testified also that he had always been advised by the company's counsel that the resolution gave the company full authority to lay its tracks. The resolution has been set aside by this court, and the company's tracks remain in the streets wholly without authority. Nor will the fact that the act was done after consultation with counsel and upon his advice justify disobedience (*Cape May and S. Co.* v. *Johnson*, 8 *Stew. Eq.* 422), especially when the proceeding is taken against the company and is in its nature remedial, as well as for the vindication of the authority of the court. The distinction between proceedings against a corporation by way of contempt and a like proceeding against an employe, is pointed out in *Pennsylvania Railroad Co.* v. *Thompson*, 4 *Dick. Ch. Rep.* 318.

Proceedings by way of contempt will lie against corporations as well as against individuals. In the case of individuals the process is by attachment, followed by a fine or imprisonment, or both. In the case of a corporation the process in equity courts is by writ of sequestration. In courts of law, *distringas* is the appropriate writ against a corporation. 2 *Arch. Pr.* 108. In proceedings against a corporation for contempt, the writ of attachment is inappropriate—*distringas* will issue as an original, to be followed if necessary by an *alias* and *pluries* until justice be done. *London* v. *Lynn*, 1 *H. Bl.* 206, 209, and note *b; Spokes* v. *Banbury*, 11 *Jur. N. S.* 1010; *McKin* v. *O'Dom*, 3 *Bland Ch.* 407, 425–427. Numerous decisions to the same effect are cited in the brief of counsel of the prosecutor.

· We are constrained to adjudge that the defendant corporation is in contempt in laying its tracks in the streets in question pending the writ of *certiorari*. Counsel will be heard with respect to the judgment to be thereon pronounced. We

are not informed as to the prosecutor's *status* in those streets, so as to be able to decide whether or not. the prosecutor is entitled to have the condition of things restored to what it was when the writ of *certiorari* was served.