T. D. CARR and J. T. CROSS, Plaintiffs, v. DISTRICT COURT
OF VAN BUREN COUNTY, IOWA, and C. W. VERMIL-
LION, Judge.

**Injunction:** VIOLATION: NOTICE. A defendant in an injunction pro-
ceeding is bound to obey the order of court even though errone-
ous and so held on final hearing: And this is true where he has
actual notice of the order even though he had not been served
with a copy of the writ.

**Same.** The violation of an injunctional order by any device or sub-
terfuge will not be permitted; and the fact that defendants are
public officers does not .change the rule.

**Contempt:** DISCRETION: REVIEW. A proceeding to punish one for ·
civil contempt is addressed to the discretion of the court, in the
absence of statutory regulations, and its determination will stand
unless gross abuse of such discretion is shown. And as a rule
the appellate court in reviewing a contempt proceeding will not
consider questions of fact.

**Same.** A contempt proceeding is in its nature criminal, or what
may be termed *quasi*-criminal, and to warrant punishment a clear
case of contempt must be shown.

**Same:** DEFENSES. Advice of counsel is not a defense to a proceed-
ing to punish for contempt, although it may be considered in
mitigation; nor is ignorance of the law in itself a defense in such
cases except where criminality or guilt depends upon the intention
with which the act is done; but changed conditions may always
be considered in determining the question of guilt or innocence.

**Municipal corporations:** ISSUANCE OF WARRANTS: INJUNCTION: CON-
TEMPT. In this action the officers of a school district were en-
joined from paying certain warrants, and upon holding the war-
rants invalid the court did not abuse its discretion in discharging
the officials from an alleged contempt in proceeding to issue new
warrants in place of the old ones, and in levying a special tax to
meet the same, which act had been held lawful by the court and
the new warrants had .not been delivered or the old ones sur-
rendered, and where the new warrants were to be paid out of the
special tax levy which the officers had not been enjoined from

making; especially as the information for contempt had not then been filed and the legislature subsequently to the decree in injunction had legalized the original warrants.

**Same.** Although an unconstitutional statue is void and generally of no effect, still where it was enacted as a guide to public officials a very strong case must be made to justify their punishment for contempt in attempting to carry out the provisions of the statute.

**Same.** While the legislature can not change or modify a decree of court relating to private rights this rule does not apply in its full extent, if at all, to actions affecting municipal corporations which have been created as a part of the instrumentalities of government.

### TUESDAY, JUNE 14, 1910.

CERTIORARI proceedings to the defendants to review an order made in a contempt proceeding brought against certain individuals as members of a school board and others as individuals holding evidences of indebtedness against the school district for violation of certain writs of injunction issued by the District Court of Van Buren County, which proceedings resulted in the discharge of the defendants and their complete exoneration. Petitioners in this case filed the information for contempt and are now prosecuting these certiorari proceedings. Order *affirmed,* and writ *dismissed.*

*Walker & McBeth,* for plaintiffs.

*Hughes & McCoid,* for defendants.

DEEMER, C. J.—This case has a peculiar history and is so much involved that we shall have some difficulty in stating it with any degree of brevity or clearness. In the year 1900 the independent school district of Farmington, in Van Buren county, which we shall hereafter call the "school district," pursuant to a special election of the

voters, issued and sold $10,000 in bonds at par for the purpose of erecting a new schoolhouse. Some time thereafter the school board passed a resolution authorizing the issuance of school warrants to the amount of $10,000 and directed their sale. The Farmers' Savings Bank purchased some of these warrants and thereafter brought suit thereon against the school district. In that action plaintiff in this proceeding, and others, intervened, alleging that the warrants were in excess of the constitutional limit and were void. They asked that the school district, through its officers, be enjoined from paying any of said warrants and the owners enjoined from collecting the same. On December 3, 1904, final decree was entered in this action, holding these warrants invalid, and the decree provided:

It is further ordered, adjudged, and decreed by the court that the defendants, the Farmington independent school district, and its treasurer, and his successors in office, be and they are hereby restrained and enjoined perpetually from paying any part of the balance of the principal or interest of, or on either of said warrants sued on and involved in this action, being warrants numbered 174, 175, 193, 197, 203, 267, 292, 297, 299, 309 and 310, as described above in this decree, other than the said sum of $896.99 decreed above to be a part of the valid indebtedness of said school district. And it is further ordered, adjudged, and decreed by the court that the plaintiff the Farmers' Saving Bank and the defendants Fred Varnkall and John Mulvahill be and they are hereby restrained and enjoined from demanding, receiving, or collecting from said school district any part of the balance of said warrants described above, either principal or interest, other and except the said sum of $896.99, as their rights therein and thereto may appear, and which is herein decreed to be a part of the valid indebtedness of said school district.

Thereafter the Thirty-Third General Assembly passed an act legalizing, or attempting to legalize, all the acts of the school district by what is known as chapter 281 of the

acts of that session of the Legislature. This act, after reciting all the proceedings of the school district from the beginning down to the time of the passage of the bill, concluded as follows:

Section 1. That all of the warrants on the school fund issued by the independent school district of Farmington, in Van Buren county, state of Iowa, through its board of directors, as above set forth, are hereby legalized and declared valid, and that the acts of said board in relation thereto are hereby declared to be valid and effectual as though all acts of said board had been in strict compliance with law.

Sec. 2. Nothing in this act shall affect in any way any pending litigation in relation to the subject matter hereof.

Among the recitals in the act were the following:

Whereas, the said board of directors by resolutions, passed by the unanimous vote thereof, at regularly called meetings of the board, held August 31, 1900, September 22, 1900, and September 29, 1900, authorized, in behalf of said district, the issuing of warrants aggregating a little over ten thousand dollars on the school fund of such district, which warrants were afterwards issued and are numbered 174, 175, 193, 197, 203, 267, 292, 297, 299 and 309 respectively; and, whereas, the proceeds of said warrants were necessary, and such proceeds were in fact used on the payment of the cost of construction and the equipment of said new school building; and, whereas, the aforesaid structure was completed and thoroughly equipped for the purpose intended, as before stated, by payment of the fair and reasonable cost only for the work and materials necessary therefor and said district has had the benefit of the full face value of said warrants; and, whereas, questions as to the legality of said warrants have arisen as to whether the said school district was within its authorized and legal power when said warrants were issued, and other doubts have arisen as to the regularity of the proceedings in relation thereto: Now and therefore, etc.

This act was passed April 7, 1909, and went into effect upon publication, which occurred April 13th of that year. Almost immediately after the passage of the act, and on April 9, 1909, plaintiffs herein filed a petition in the district court of Van Buren County in which they recited the history of the transaction relating to the issuance of the warrants, set forth the legalizing act, its invalidity, and asked that defendants in the suit be enjoined from paying the warrants referred to in said act and in prior proceedings, that the legalizing act be declared void, and that a time be fixed for the hearing of an application for a temporary writ of injunction. Pending final trial, the district court being then in session, an order was issued fixing the time for the hearing of the application for the temporary writ on April 16, 1909, at 10:00 o'clock a. m., and at the same time the district court made the following order: "It is further ordered that the said defendant, B. F. Ketchem, be and he is hereby, restrained from using or appropriating any of the funds, property, or money of the said school district of which he is treasurer, to wit, the independent district of Farmington, in the payment of school warrants Nos. 174, 175, 193, 197, 203, 267, 292, 297, 299, 309 and 310, the payment of which was heretofore enjoined by decree of this court on the 3d day of December, 1904, until after the said hearing by this court on the application for temporary injunction as above ordered. It is further ordered that this order be. served upon the defendant B. F. Ketchem at once." On the same day, to wit, April 9, 1909, the sheriff served a copy of this order upon the following named parties: B. F. Ketchem, treasurer; M. L. Barger, president; W. H. Coulter, secretary; George Junkins, director; H. F. Barton, director; A. H. Hartick and Joseph Steinmeyer, directors of the independent district of Farmington."

On April 15, 1909, the board of directors of the school

district met in special session, took up the matter of the school warrants, and passed a resolution containing, among other things, the following:

Whereas, the said vote authorized said school district to so take down said old building and erect the new school building of not less than ten rooms; and, whereas, after said building had been completed and furnished, or equipped as required, said school district did attempt to contract and pay by the issue of said warrants to the parties thereto entitled; and, whereas, it was found that said district was unable to make said contracts and pay for the same at the time; and, whereas, the said school district has never paid for said labor and materials, but has kept and still retains the value of said labor and material and retains the said school building for its use so erected and equipped; and, whereas, it may be that said school district has retained and still holds the said schoolhouse as trustees charged with the obligations aforesaid; and, whereas, it is just and equitable that said district pay for said materials and labor and retain the title and ownership of said buildings for the purpose intended; and, whereas, it now appears that said district can and is authorized by law to pay or make appropriations in payment for said labor and materials, and for the use of the money or value of said labor and materials for the time the said district has so retained the same: Now, therefore be it resolved, that the said school district does hereby agree with the parties now holding and owning the obligations of said independent school district to pay for said debts, and said school district will issue to such holders warrants in such denominations as shall pay for said liability, the principal of the dates where such labor and materials were furnished, with 6 percent interest thereon until the present date; and that said independent district does hereby order that warrants be drawn on its treasurer, duly signed and attested in said amounts and delivered to the parties thereto entitled. It is further ordered that the treasurer pay said warrants in whole, if there be on hands sufficient money therefor, and if not sufficient, that a tax be levied to collect such remainder, and the proceeds thereof be applied to the payment of said debt.

· Pursuant to this resolution warrants were drawn up as follows:

No. 88, April 15, 1909, to Farmers' Savings
  Bank ................................. $4,000 00
No. 89, April 15, 1909, to Fred Varnkall...   603 01
No. 90, April 15, 1909, to Farmers' Savings
  Bank ................................. 1,000 00
No. 91, April 15, 1909, to Farmers' Savings
  Bank ................................. 1,000 00
No. 92, April 15, 1909, to Farmers' Savings
  Bank ................................. 1,000 00
No. 93, April 15, 1909, to Farmers' Savings
  Bank ................................. 1,000 00
No. 94, April 15, 1909, to Fred Varnkall...   307 53
No. 95, April 15, 1909, to John Mulvahill..   752 50
No. 96, April 15, 1909, to Henry Mulvahill.   753 30
No. 97, April 15, 1909, to Farmers' Savings
  Bank .................................   628 06
                                        _____
     Total......................... $11,044 40

It is practically conceded that these new warrants were never delivered, and it is also admitted that the old ones were never surrendered or canceled. On the next day, the 16th, the application for the temporary writ on the new petition was heard and the matter taken under advisement, and on the 16th day of May a temporary writ of injunction was ordered as prayed. In the meantime, however, and on the 23d day of April, the board of directors again met and passed a resolution, the material parts of which are as follows: "Resolved that in payment of the building and equipment for the schoolhouse in said district, the said district agrees to levy a tax of seven mills, not to exceed that amount, in each and every year hereafter, beginning 1910, and ending 1916, both years inclusive, and to apply the same on certain warrants heretofore issued, numbered 90 to 97 inclusive, and that said school district will apply the same in payment of said warrants as fast as the

money therein is collected. It is further agreed that said warrants shall not constitute any general indebtedness of said school district, but that the holders' thereof are to be paid solely out of said levy. This resolution to be in modification and amendment of the resolution of the school district herein passed and adopted 15th day of April, 1909, and that the holders of the warrants hereinbefore named shall present the warrants to be endorsed thereon the following words. 'The within warrant is to be payable solely out of a tax to be levied in the years, which the respective warrants are made payable."

It seems that plaintiffs in the last injunction proceeding were not advised of the resolutions and action of the school board until after the submission of the application for the temporary writ of injunction, and they on the 30th day of April, 1909, filed informations for contempt against the defendants in the original action and the defendants in the action brought after the passage of the legalizing act, claiming that each of said defendants had violated the orders and decrees of the court in these actions. They were cited to appear before Hon. F. W. Eichelberger, judge, at Fairfield, Iowa, on May 7, 1909, where after a hearing they were bound over for final hearing at the August, 1909, term of the district court of Van Buren county. At the August term of said Van Buren county district court the matter was again brought up, and it was agreed that the contempt proceedings should be heard and tried with the action brought on April 9, 1909, for an injunction after the passage of the legalizing act, but that separate judgments should be entered in the cases. Trial was had accordingly, resulting in the following order in the contempt proceedings: "That the acts of said defendants in said contempt proceedings were valid and lawful, and not in violation of said original injunction nor in violation of said temporary injunction or restraining order in said case of Hartrick, Cross, and Carr against M. L. Barger and

others, but that all of said acts and doings were valid and lawful, and the said defendants, and each of them are found not guilty of such alleged contempt, but their said undertakings are exonerated and said defendants are discharged."

The petition for injunction in the second case was also dismissed at plaintiff's costs. This proceeding in this court is to test the validity of the order of the court discharging the defendants in the contempt proceedings. They were charged in the information filed against them of violating the original decree of December 3, 1904, and of violating the order made by the judge on April 9, 1909, in which defendant Ketchem was enjoined · from issuing or appropriating any of the funds, property, or money of the school district in payment of the warrants theretofore issued by the board. The terms of these two orders have already been set out and need not be repeated here.

It is strenuously insisted by plaintiff's counsel that the trial court was in error in discharging the members of the school board and others upon the contempt proceedings. They say that their conduct was in plain

1. INJUNCTION: violation: notice.

violation of the previous orders of the court, and that the legalizing act under which the school board and others assumed to act at their meetings on April 15th and 23d was and is unconstitutional, invalid and void, ·and constituted no excuse for their conduct. They ask us to reverse the action of the trial court in discharging these parties, and that we send the case back with orders to find the defendants in the orders and decrees guilty of contempt. Neither of the main suits are now before us and are not the subject of review in this proceeding. The decree of December 3, 1904, has not been appealed from, and, while we understand there is an appeal in the case brought after the passage of the legalizing act, that case is not now before us except in a collateral way.

The first premise in plaintiff's argument on this appeal to the effect that the defendants in the injunction proceedings were bound to obey the orders and decrees of the court, even if erroneous and held improvidently granted on final hearing, must, of course, be conceded. *State v. Baldwin,* 57 Iowa, 270; *Hatlestad v. Hardin District Court,* 137 Iowa, 146; *Ohlrogg v. District Court,* 126 Iowa, 247; *Langworthy v. McKelvey,* 25 Iowa, 55. And it is also true that a defendant in an injunction proceeding who has actual notice that a writ has been ordered or granted is as much bound by the order as if he had been duly served with the writ or a copy thereof. *Coffey v. Gamble,* 117 Iowa, 550; *Hawks v. Fellows,* 108 Iowa, 135; *Bartel v. Hobson,* 107 Iowa, 647.

Again, courts will not permit the violation of an injunctional order by any device or subterfuge if that device is a substantial violation of the injunction. *Lake v. Wolfe,* 108 Iowa, 184. And the fact that defendants are public officials does not in any manner change this rule. *Bass v. Shakopee,* 27 Minn. 250 (4 N. W. 619, 6 N. W. 776); *People v. Sturtevant,* 9 N. Y. 263 (59 Am. Dec. 536).

2. SAME.

The last injunctional order issued before the filing of the information for contempt did no more than prohibit Ketchem from appropriating any of the funds, property, or money of the district to the payment of certain warrants, and there is no sufficient testimony to justify a holding that he or any of his codefendants did anything which would be in violation of this order before the informations were filed. The original decree of December 3, 1904, is broader than this subsequent order, and it is claimed for the defendants that this decree was superseded and set aside by the legalizing of the Legislature to which we have already referred. To this plaintiffs respond by saying that the Legislature has no power to set aside a decree of court in any case, and, assuming that it has

such power, the act in question is unconstitutional and void, because: (1) It is a special and not a general act; (2) it in effect creates a debt or allows a school district to contract a debt in excess of the constitutional limit; (3) because it is retroactive and not within the power of the Legislature; and (4) because it impairs the obligations of a contract and injures and destroys vested rights. In this proceeding there is a danger which we must avoid, to wit, that of passing upon the merits of the main case in this certiorari proceeding.   This should not be done if it can be avoided.

Now we are thoroughly convinced that the evidence failed to show any violation of the injunctional order issued against Ketchem April 9, 1909. If there be a violation of any order or decree, it is of the one passed December 3, 1904. But it must be remembered, in this connection, that after that decree was entered the Legislature in its sovereign capacity passed an act in which it expressly legalized and declared valid the warrants referred to in the original decree, and the acts of the board were declared to be as valid as though had in strict compliance with the law. That is what may be called a "civil contempt"—that is to say, it is charged in the information that the parties did something contrary to the order of the court in a civil action brought for the benefit of the opposing party—and it is quite generally held in such cases that an applicant is not entitled, as a matter of right, to an order for the commitment of a person for contempt.   *People v. Durrant,* 116 Cal. 179 (48 Pac. 75).   The application in such cases is addressed to the sound discretion of the court. *Joyce v. Holbrook,* 7 Abb. Prac. (N. Y.) 338; *Stephenson v. Hanson,* 6 Civ. Proc. (N. Y.) 43.

The general rule, in the absence of statutory regulation, is that the matter of dealing with contempts, and when and how they shall be punished, is within the sound dis-

3. CONTEMPT:
   discretion:
   review.

cretion of the trial court, and, unless such discretion is
grossly abused, the decision must stand. *State v. Archer,*
48 Iowa, 310; *Williams Rogers Co. v. Rogers,* 38 Conn.·
121; *Bagley v. Scudder,* 66 Mich. 97 (33 N. W. 47);
*Froman v. Froman,* 53 Mich, 581 (19 N. W. 193);
*New York v. Ferry Co.,* 64 N. Y. 622. And as a rule
a reviewing court will· not consider questions of fact.
*Holly Mfg. Co. v. Venner,* 143 N. Y. 639 (37 N. E.
648); *In re Pryor,* 18 Kan. 72 (26 Am. Rep. 747);
*State v. McKinnon,* 8 Or. 487; *Turner v. Com.,* 2 Metc.
(Ky.) 619.

The proceeding is in its nature criminal,` or what
might aptly be terminated "quasi criminal." *Grier v.
Johnson,* 88 Iowa, 99; *Church of Bloomington v. Mus-
catine,* 2 Iowa, 69. And a clear case of

4. SAME.        contempt must be shown. *Verplank v. Hall,*
21 Mich. 469; *Slater v. Merritt,* 75 N. Y. 268; *Benbow
v. Kellom,* 52 Minn. 433 (54 N. W. 482); *Sutton v.
Davis,* 64 N. Y. 633.

And while advice of counsel is no defense, *West
Jersey Traction Co. v. Camden,* 58 N. J. Law, 536 (37
Atl. 578; *Myers v. State,* 46 Ohio St. 473 (22 N. E. 43,

5. SAME:        15 Am. St. Rep. 638), it may be considered.
defenses.        in mitigation. Ignorance of the law is not
in itself a defense save where criminality or guilt depends
upon the intention with which the act is done. *In re
Contempt by Four Clerks,* 111 Ga. 89 (36 S. E. 237);
*In re Contempt by Two Clerks,* 91 Ga. 113 (18 S. E.
976); *State v. Sparks,* 27 Tex. 705. But change of con-
ditions may always be considered in determining the
question of guilt or innocence. *Larrabee v. Selby,* 52 Cal.
506; *Mahoney v. Van Winkle,* 33 Cal. 448; *Pyron v.
State ex rel. Lowe,* 8 Ga. 230; *Glover v. Board of Edu-
cation,* 14 S. D. 139 (84 N. W. 761). The latter case
is quite in point on this proposition. It is there said:
"The changed conditions demanded summary steps to be

taken immediately after the boy was admitted, in compliance with the writ issued upon proof that his previous exclusion was unwarranted, and, as stated above, the fact that he was again suspended on the same day, pursuant to the simultaneous action of all the legally constituted health authorities does not constitute contempt."

Going now to the exact terms of the original decree, and looking to the testimony offered to support the information for contempt, it seems to us that the trial court

6. MUNICIPAL CORPORATIONS: issuance of warrants: injunction: contempt.

did not abuse its discretion in discharging the defendants from the alleged contempt. Especially is this true when we take into consideration the legalizing act passed by the Legislature some years after the original decree was passed. What defendants were attempting to do the trial court held was lawful. That is to say, they were proceeding to issue new warrants in place of the old ones and to levy a special tax to meet these warrants. The new warrants issued by them had not been delivered nor the old ones surrendered, and the new ones were to be paid out of a special tax levy which the defendants to the information had never been enjoined from levying, or at least had not been so enjoined when the information for contempt was filed. Prior to the filing of the information there had been no order of court forbidding defendants from levying a tax for the payment of the warrants which the Legislature attempted to legalize, and defendants were not proposing to pay the old warrants save through this tax levy. In what they did they were not, in our opinion, violating the terms of the original decree. At any rate, the trial court was justified, in view of the act of the Legislature before quoted, in holding that the defendants in the main action had not been shown guilty of a criminal or malicious intent to violate the previous orders of the court.

It is said, however, that this legalizing act was and is

unconstitutional, and that it afforded no protection to the
defendants in the actions.    True it is that an unconstitu-
tional act is void, and generally speaking,
7. SAME.        of no effect.    But when passed as a guide
to public officials, and these officials are attempting to carry
it out, we think it must be a very strong case to justify
the punishment of such officials for carrying out, or
attempting to carry out, the legislative will.

The main point made by plaintiff's counsel in this
connection is that the Legislature had no right, power or
authority to modify or in any manner change a decree
of court.    Of course this is the general,
8. SAME.        although not an universal, rule.    The rule
applies to private and individual rights, and not in full
force, if at all, to actions affecting municipal or quasi
municipal corporations or to bodies municipal or otherwise
which have been created as a part of the instrumentalities
of government.    In its sovereign capacity the state may
deal with these instrumentalities or governmental agencies
in a manner quite different from its dealings with indi-
viduals or private corporations or municipal corporations
insofar as their private rights are concerned.    See, as
supporting these views, *Guthrie Co. Bank v. Guthrie,* 173
U. S. 528 (19 Sup. Ct. 513, 43 L. Ed. 796); *Utter v.
Franklin,* 172 U. S. 416 (19 Sup. Ct. 183, 43 L. Ed. 498).
In the latter case there had been a judgment of court
invalidating a bond issue which was afterward validated·
by act of Congress.    See, also, *Richman v. Board,* 77 Iowa,
513; *McSurely v. McGrew,* 140 Iowa, 163.

There is no need for further discussion.    Even if
the act should be held invalid upon final hearing, this
should not be made a ground for punishing these public
officials who are attempting in good faith to follow it.
A more orderly course of procedure, as it seems to us,
would be to try out the issue of the validity of the act in
a proper case, and, if necessary, secure a restraining order

from this court to preserve the *status quo* during the pendency of the appeal. We shall not in this proceeding determine definitely the constitutionality of the act in question. It is enough to say that according to the record defendants were not violating the original decree of injunction in attempting to carry out the subsequent act of the Legislature. That is the pivotal question in the case. Had they been enjoined from proceeding under this new law and were claiming immunity because they were following it, a very different question would arise. Here they had not been enjoined from so doing; but claim is made that in following it they are guilty of contempt because of a prior decree passed long before the act in question went into effect. No such case is presented as would justify us in interfering with the order of the trial court.

The order of discharge must, therefore, be affirmed, and the writ heretofore issued dismissed. *Affirmed* and writ *dismissed.*