MANHATTAN ELECTRIC LIGHT Co., Limited, *v.* HARLEM LIGHTING Co. *et al.*

(*Supreme Court, General Term, First Department.* February 18, 1892.)

1. INJUNCTION—VIOLATION—EVIDENCE.

The M. Co. obtained a judgment against the H. Co. for a large amount, and a creditor of the H. Co. filed an intervening petition, attacking the judgment as collusive and fraudulent. Afterwards an order was entered by consent of all parties that all proceedings to enforce the judgment should be stayed until the coming in of a referee's report. After the entry of this order the directors of the H. Co. passed a resolution that certain of its mortgage bonds be delivered to the M. Co. as security for its judgment. *Held,* that the hypothecation of the bonds in question was a violation of the staying order, and that the M. Co. and directors of the H. Co. were properly adjudged to be in contempt. VAN BRUNT, P. J., dissenting.

2. SAME—EVIDENCE.

The fact that the H. Co. was indebted to the M. Co. in a further sum not embraced in the judgment in question, and intended also to be secured by the hypothecation of the bonds, was no excuse for the violation of the order.

Appeal from special term, New York county.

Action by the Manhattan Electric Light Company, Limited, against the Harlem Lighting Company and Levi L. Gans. From an order denying plaintiff's motion to rescind an order punishing it and others for contempt, plaintiff and such others appeal. Affirmed.

The opinion of the court below was delivered by Mr. Justice LAWRENCE, as follows: "The order of the special term, made by Mr. Justice BARRETT, provided that 'all proceedings for the collection and enforcement of the said judgment, and all proceedings in which the said judgment is used as a basis or foundation, shall be stayed until the coming in of the report of the said referee, and until the service of a notice of the entry of the order or judgment, made upon the said referee's report; the costs of the proceeding and reference to abide the final result of such reference, and of the order or judgment entered upon the report of the said referee.' Notwithstanding the provisions of the order, the directors of the Harlem Lighting Company, on the 28th day of September, 1891, passed a resolution that 'the secretary be authorized to deposit two hundred (200) of the second mortgage bonds, one thousand dollars ($1,000) each, of the Harlem Lighting Company, with the Manhattan Electric Light Company, Limited, as security for the claim due by the Harlem Lighting Company to the Manhattan Company; but no sales of bonds shall be made on account of such indebtedness without the express assent of the directors of the Harlem Lighting Company until the amount due the Manhattan Electric Light Company, Limited, shall finally be judicially determined. When such amount is judicially determined, the said bonds may be sold, but only at public sale, after due notice of thirty days.' It seems to me idle to say that the passage of that resolution, and the action taken thereunder, cannot be regarded as violations of the order of the special term. Even if the transfer of the bonds of the Harlem Company into the treasury of the Manhattan Company was not a direct proceeding for the collection of the judgment, it certainly was a proceeding for its ultimate enforcement, and a proceeding of which the judgment was the basis and foundation. The fact that the resolution provided that no sales of the bonds should be made on account of such indebtedness, without the express assent of the directors of the Harlem Company, until the amount due the Manhattan Electric Light Company, Limited, shall finally be judicially determined, does not mitigate the contempt of the order of the court. The Harlem Company may at any moment give its consent to the sale, and, under the resolution, the consent of the company, and not the order of the court, will determine whether the bonds shall be sold to pay the alleged fraudulent judgment, or whether such sale shall be deferred until the report of the referee has been made and confirmed. The object and intent of the order of Mr. Justice BARRETT undoubt-

edly was to preserve the exact *status* of the parties as it existed when the stipulation was signed and the order made. That object and intention should not be defeated by the resolution of September 28, 1891, before referred to. I am of the opinion that the resolution under consideration was in violation of the order of July 31, 1891, and, unless the bonds are immediately restored to the treasury of the Harlem Company, and the resolution aforesaid rescinded, this motion will be granted, with costs. Settle the order on two days' notice."

Argued before VAN BRUNT, P. J., and PATTERSON and O'BRIEN, JJ.

*Hoadly, Lauterbach & Johnson,* (*Nathaniel Myers* and *Wm. N. Cohen,* of counsel,) for appellants. *Dittenhoefer & Gerber,* (*A. J. Dittenhoefer* and *David Gerber,* of counsel,) for respondents.

O'BRIEN, J. On June 11, 1891, the plaintiff obtained by default a judgment against the defendant, the Harlem Lighting Company, for the sum of $142,802.43. In July, 1891, Levi L. Gans, claiming that this judgment was collusive and fraudulent, petitioned this court to be allowed to intervene as a defendant, and contest the claim on which the judgment was based. On July 29th, by an agreement drawn by the attorneys, it was stipulated that this petition be granted; that then this cause be referred; and that meanwhile no proceeding to enforce the judgment should be taken. Pursuant to this stipulation, an order was entered making Gans a party defendant, referring the issues to a referee, and further ordering and directing that all proceedings for the collection and enforcement of said judgment, and all proceedings in which the said judgment should be used, as a basis or foundation, be stayed until the coming in of the referee's report. On September 28th the individual appellants, as the board of directors of the Harlem Company, passed a resolution authorizing the secretary to deliver $200,000 of the second mortgage bonds to the Manhattan Company, as collateral security for the payment of claims due the latter by the former company, but providing that the same should not be sold until the amount due the Manhattan Company should finally be judicially determined. It is asserted that, in addition to the claim which was made the basis of the judgment, the plaintiff, as against the Harlem Company, had another claim, amounting to $50,000, which had accrued between April 1 and September 30, 1891. As some stress has been placed upon this circumstance of the existence of this indebtedness of $50,000, it becomes necessary to briefly refer to the explanation given by the appellants of the purpose sought to be effected by the delivery of the $200,000 in bonds of the defendant company.

Mr. Bernheim, in his affidavit, states that said resolution was made by deponent, and, as he verily believes, seconded by Dr. Hochheimer, and passed by the directors voting therefor, for the purpose not only of securing the claim which formed the basis of the judgment, but the claim which had accrued from April 1, 1891. Again, he says: "The intent was, as the resolution expressly provides, to secure the entire claims due to the Manhattan Company, (both in suit and not in suit,) when it should be finally judicially determined what the amount due was, and for the purpose of settling accounts between the Harlem and Manhattan companies by the sale of the collateral, and thus avoid the issue of an execution upon any judgment." Subsequent to the passage of the resolution of September a motion was made to punish plaintiff and the individual appellants for contempt, on the ground that this conditional hypothecation of bonds was a violation of the order entered under the stipulation. The order appealed from compelled the appellants either to deliver the $200,000 of bonds held by them as collateral security, and cause a rescission of the Harlem Company's resolution, authorizing the hypothecation of the bonds, and to pay respondents $10 costs of motion, or be committed for contempt until they did so, coupled with the obligation of paying

a fine of $250, or spending five days in the county jail, and paying $10 costs of motion. The appellants complied with the order by redelivering the bonds, and having the resolution of the Harlem Company rescinded. It will thus be seen that the order made and now appealed from, and the action taken thereon by the appellants, were to restore matters to the same condition in which they were prior to the delivery of the $200,000 in bonds. We might be content— it being fair and just—to leave the parties where the order has placed them; but it is insisted that the learned judge below erred in making the order, and that as a matter of right they are entitled to have the order appealed from reversed. We do not agree with this view, and in giving our reasons therefor we need add but little to what has been so well stated by the learned judge below in his opinion. We are not called upon for the purpose of aiding the appellants to draw distinctions between the force and effect of injunction orders, properly so called, and orders staying proceedings; nor are we to here determine as to the right or propriety of the order staying proceedings the terms of which were fixed by the parties, and not by the court. After the defendant Gans had presented his petition, and obtained his order to show cause, for the purpose of staying all proceedings to enforce the judgment, upon the ground that it was collusive and fraudulent, the appellants, through their counsel, entered into a formal stipulation, which was the basis of the order granting such stay of proceedings. We regard it as entirely immaterial as to whether there was an additional claim of $50,000 due by the defendant or not, for, in view of what has already been said, it is evident that the $200,-000 of bonds were given to secure also the claim which was the basis of the judgment, and which by the order was stayed. If, therefore, it was a violation of the terms of the order to deliver the bonds as security for the claim upon which the judgment was based, it is entirely immaterial whether or not there was some other claim for which some of the bonds were also delivered. The appellants, in justification, insist that there was no violation of the specific terms of the order, and that in what they did they acted in good faith, under the advice of counsel. This latter circumstance, that the stipulation, which in effect was embodied in the order, was carefully drawn by counsel, points out a distinction which we think should be taken between a case such as this is and cases cited by appellants, where the courts, being satisfied that there was no willful disobedience of its order, and where the order itself was ambiguous or doubtful, and fairly capable of two constructions, one consistent with the person's innocence of any intentional disrespect to the court, have seized upon such circumstances as the doubt and ambiguity or double construction to be placed upon the terms of the order, for the purpose of relieving one from the punishment that must follow an adjudication for contempt. Here, however, where the parties by their counsel have entered into a stipulation, upon which an order has been made, its terms should be construed as the parties themselves undoubtedly intended, at the time the order was made, they should be construed.

We think that there was a clear manifest violation by the appellants of the order staying proceedings. This order provided "that all proceedings for the collection and enforcement of said judgment, and all proceedings in which the said judgment is used as a basis or foundation, be stayed until the coming in of the said referee's report," etc. The suggestion now made, that the bonds were delivered not to secure the judgment, but the claim due the Manhattan Company, should not be entertained, for the reason that, the claim having been merged in the judgment, there existed no longer a claim other than the judgment, which was, under the stipulation, allowed to stand as security. It must be remembered, moreover, that the proceedings brought by Gans, resulting in the stipulation and order, attacked both the judgment and the claim upon which it was based; and the claim itself, its validity and enforcement, were the matters referred to the referee to determine. As well

said, therefore, by Mr. Justice LAWRENCE: "Even if the transfer of the bonds of the Harlem Company into the treasury of the Manhattan Company was not a direct proceeding for the collection of the judgment, it certainly was a proceeding for its ultimate enforcement, and a proceeding of which the judgment was the basis and foundation." What was sought by the petitioner in his motion to intervene was to prevent the application of the property of the defendant company to the payment of the claim which he alleged to be fraudulent and collusive. It was that, undoubtedly, that the order staying the proceedings was intended to prevent, —that, until the validity of the claim upon which the judgment was based could be judicially determined, the property of the defendant company should not be applied in any way in satisfaction thereof. Notwithstanding that order, we think the defendant company, in delivering over $200,000 of its bonds as security for this very claim, for which the judgment was allowed to stand as security, and retaining the bonds, would be to enable the plaintiff, upon a claim which had been attacked, to obtain indirectly the property of the defendant company, which was prohibited by the terms of the order staying their proceedings. As said in *Mayor* v. *Ferry Co.*, 64 N. Y. 622: "Injunction orders must be fairly and honestly obeyed, * * * and the court will not look with indulgence upon schemes, however skillfully devised, designed to thwart its orders." We are of opinion, therefore, that the terms and spirit of the order were violated, and good faith required that the property of the defendant company should not be placed in possession of the plaintiff until its rights thereto, which were involved in the issues, which had been referred to the referee, were finally determined. It is insisted, however, by appellants that the delivery of the bonds resulted in no injury to the defendant company, for the reason that the resolution under which they were delivered provided that they should not be sold, without the express consent of the directors of the defendant company, until the amount due the Manhattan Company shall be finally judicially determined. This argument has been fully answered by the judge in his opinion below. We agree with him that the object and intent of the order undoubtedly was to preserve the exact *status* of the parties as it existed when the stipulation was signed and the order made. We are of opinion, therefore, that the order appealed from should be affirmed, with costs and disbursements.

PATTERSON, J., concurs.

VAN BRUNT, P. J. I dissent. The stay was not an injunction order, but was merely a stay of legal proceedings, and that is all the court could grant in the proceedings before it. An injunction can only be granted upon a complaint in an action where such relief is proper; and, whatever might have been the interpretation of the language in question, had there been an injunction, no such interpretations can be indulged in, because the court had no power to then grant an injunction. The case of *Mayor* v. *Ferry Co.*, 64 N. Y. 622, has therefore no application.